930 A.2d 428

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JASON G. MEYER, DEFENDANT–RESPONDENT.

Argued March 20, 2007—Decided September 19, 2007.

*Samuel J. Marzarella,* Assistant Ocean County Prosecutor, argued the cause for appellant (*Thomas F. Furguson,* Warren County Prosecutor and *Thomas F. Kelaher,* Ocean County Prosecutor, attorneys).

*Yvonne Smith Segars,* Public Defender, argued the cause for respondent (*Ms. Segars,* attorney; *Stephen P. Hunter,* Assistant Deputy Public Defender, of counsel and on the brief).

*Sharon Bittner Kean* submitted a brief on behalf of *amicus curiae* Association of Criminal Defense Lawyers of New Jersey.

*Craig R. Levine,* Senior Counsel, submitted a brief on behalf of *amicus curiae* New Jersey Institute for Social Justice (*Mr. Levine* and *Lowenstein Sandler,* attorneys; *Mr. Levine, John W. Bartlett* and *Jody T. Walker,* on the brief).

Justice ALBIN delivered the opinion of the Court.

The New Jersey Judiciary created Drug Courts within the criminal part of the Superior Court, Law Division to address the unique problems and needs posed by non-violent, drug-dependent offenders who, through intensive supervision and treatment, have the high potential for recovery and building a productive life. Drug Courts have proven successful in maximizing the rehabilitative prospects of addicted offenders, reducing the cycle of recidivism, and yielding cost-savings to our overburdened criminal justice system.

In this appeal, the State challenges the admission of defendant Jason G. Meyer into Drug Court. The State contends that only those defendants eligible for "special probation" under *N.J.S.A.* 2C:35–14 may be admitted into a drug court program. Given

defendant's several prior convictions for third-degree crimes, defendant does not meet *N.J.S.A.* 2C:35–14's eligibility requirements for "special probation," and therefore, the State argues, Drug Court is not an available option. Defendant counters that the admission criteria for Drug Court is governed by the Administrative Office of the Courts' *Drug Court Manual.* Under the *Manual's* guidelines, defendant is permitted enrollment in Drug Court.

*N.J.S.A.* 2C:35–14 merely sets forth a disposition—"special probation" for certain non-violent drug offenders—and does not exclusively determine who is eligible for enrollment in Drug Court. Although that statute and Drug Courts serve complementary purposes, the New Jersey Supreme Court through the Administrative Office of the Courts (AOC) has the ultimate constitutional authority to administer our court system, including the drug court program. We therefore affirm the trial court's decision to admit defendant into Drug Court based on the criteria set forth in the AOC's *Drug Court Manual.*

I.

In November 2004, in two separate indictments, a Warren County Grand Jury charged defendant Jason G. Meyer with third-degree possession with intent to distribute and/or distribution of an imitation controlled dangerous substance (CDS), *N.J.S.A.* 2C:35–11a, and fourth-degree shoplifting, *N.J.S.A.* 2C:20–11b(1). Defendant applied for admission into the Warren County Drug Court Program. The Warren County Prosecutor's Office objected because defendant was not eligible for "special probation" under *N.J.S.A.* 2C:35–14 based on his four prior convictions for third-degree offenses.[1] Relying on *State v. Matthews,* 378 *N.J.Super.* 396, 402–03, 875 *A.*2d 1050 (App.Div.), *certif. denied,* 185 *N.J.* 596, 889 *A.*2d 443 (2005), the prosecutor tied defendant's eligibility for

---

[1] Defendant was convicted in 2003 for bringing a stolen automobile into the State, *N.J.S.A.* 2C:20–7, in 1999 for theft of an automobile, *N.J.S.A.* 2C:20–3a, in 1998 for theft, *N.J.S.A.* 2C:20–3, and in 1998 for receipt of stolen property, *N.J.S.A.* 2C:20–7.

Drug Court directly to meeting *N.J.S.A.* 2C:35–14's criteria for "special probation."

Defendant appealed the "Prosecutor's rejection of his Drug Court application" to the Law Division. Defendant submitted that the AOC's *Drug Court Manual,* not *N.J.S.A.* 2C:35–14, governed admission into Drug Court and that the *Manual* did not limit Drug Court to "special probation" cases. *See generally* Administrative Office of the Courts, *Manual for Operation of Adult Drug Courts In New Jersey* (July 2002) [hereinafter *Drug Court Manual*]. While acknowledging that his prior convictions precluded him from receiving "special probation" under *N.J.S.A.* 2C:35–14, defendant observed that those convictions did not bar him from receiving a probationary term pursuant to *N.J.S.A.* 2C:45–1 or enrollment in Drug Court pursuant to the criteria in the *Drug Court Manual.*

Before ruling on defendant's eligibility for Drug Court, the Honorable John H. Pursel, J.S.C. ordered that defendant undergo a "clinical evaluation." That evaluation of the twenty-five-year old defendant detailed a dissipated life of drug dependency and crimes committed while under the influence of drugs and/or alcohol. Defendant, who lives with his wife and two children, described an extensive history of daily drug abuse that included injecting heroin and cocaine, smoking marijuana, and taking large amounts of over-the-counter cold medications. He admitted to using marijuana at the age of eight, alcohol at the age of nine, hallucinogenic drugs at the age of twelve, amphetamines at the age of fifteen, and heroin and cocaine at the age of seventeen. He stated that he had overdosed on drugs three times, attempted suicide, and spent one-fifth of his life behind bars. He also had been previously treated in both in-patient and out-patient programs for his drug abuse without evident success. Substance Abuse Evaluator Dennis J. Kane recommended that defendant "enter and complete a Long Term Residential treatment program and enter a Halfway House as part of a comprehensive aftercare program."

After reviewing that report and the arguments of opposing counsel, Judge Pursel admitted defendant into the drug court program. In doing so, he relied on the *Drug Court Manual*, noting that the *Manual* did not classify the eligibility criteria set forth in *N.J.S.A.* 2C:35–14 as the exclusive means for admission into Drug Court. He observed that *N.J.S.A.* 2C:35–14 provides an alternative to prison—"special probation"—for offenders subject to the presumption of incarceration, *N.J.S.A.* 2C:44–1d, and certain mandatory-minimum sentences, *N.J.S.A.* 2C:35–7. However, the *Drug Court Manual,* as Judge Pursel recognized, also allows for sentencing of "substance abusing nonviolent offenders … under the general sentencing provisions of the Code of Criminal Justice." Thus, "both prison-bound and non-bound offenders" may qualify for Drug Court. Although defendant did not meet the eligibility criteria for "special probation" under *N.J.S.A.* 2C:35–14 due to his prior third-degree convictions, he still met the *Manual's* criteria for admission into Drug Court and the Code's general sentencing criteria for imposition of a probationary term. Judge Pursel maintained that the benefits of Drug Court flowed to both the State and defendant, diverting the cost of imprisonment to treatment of an individual's addiction, thereby "lessening the likelihood that the individual would re-enter the criminal justice system by committing a new drug related offense."

The State filed a motion for leave to appeal the order placing defendant in Drug Court. In January 2006, the Appellate Division denied leave to appeal, but noted that "[t]he State may appeal an allegedly illegal sentence in the ordinary course." In March 2006, the State filed with this Court a motion for leave to appeal the Appellate Division's order denying its interlocutory appeal.

In the meantime, in February 2006, defendant pled guilty to third-degree possession with intent to distribute and/or distribution of an imitation CDS and fourth-degree shoplifting, as well as to an accusation charging him with fourth-degree resisting arrest. Apparently preserving its right to challenge Judge Pursel's earlier order, the State conditioned the plea on "defendant being accepted

to Drug Court *over the State's objection."* (Emphasis added). In April 2006, Judge Pursel sentenced defendant to a five-year probationary term "in Drug Court," requiring him to follow the "specific treatment plan determined by the [in-patient] facility and Drug Court Team." Defendant was also ordered to pay certain prescribed fines, maintain employment consistent with his treatment plan, and remain arrest-free.

Two days after defendant was sentenced, we granted the State leave to appeal from the Appellate Division's interlocutory order, thus permitting review of the trial court's order admitting defendant into Drug Court. In May 2006, the State filed a notice of appeal with the Appellate Division, challenging defendant's sentence.[2] In September 2006, this Court granted defendant's motion to directly certify the State's appeal of his sentence and to consolidate it with the appeal of his admission into Drug Court. 188 *N.J.* 345, 907 *A.*2d 1006 (2006).

We granted the Association of Criminal Defense Lawyers of New Jersey and the New Jersey Institute For Social Justice permission to participate as *amici curiae.*

## II.

The State argues that the only portal through which an offender may enter Drug Court is *N.J.S.A.* 2C:35–14. Because defendant is not eligible for "special probation" under *N.J.S.A.* 2C:35–14 due to his prior third-degree convictions, the State reasons that defendant cannot be admitted into Drug Court. The State essentially equates Drug Court with "special probation." The State, however, concedes that the trial court had discretion to sentence defendant, despite his prior record, to a probationary term on the third-

---

[2] We note that the court was authorized to impose a probationary sentence under the Code of Criminal Justice. *See N.J.S.A.* 2C:44–1e. Because that sentence was not illegal, the State had no basis to challenge it on appeal. *See State v. Lefkowitz,* 335 *N.J.Super.* 352, 355–56, 762 A.2d 323 (App.Div.2000), *certif. denied,* 167 *N.J.* 637, 772 A.2d 938 (2001); Pressler, *Current N.J. Court Rules,* comment 9 on *R.* 2:3–1 (2007).

and fourth-degree offenses to which he pled guilty. The State also concedes that the court had authority, as a condition of the probationary term, to order defendant into a drug rehabilitation program and to subject him to intensive drug monitoring. Thus, the State does not appear to object to the result, but only to the court—the place—where defendant's case is resolved and supervised. The State realizes that not only superior resources are devoted to Drug Courts, but superior outcomes are achieved there, and submits that the allocation of those resources is dictated by *N.J.S.A.* 2C:35–14.

We cannot accept the premise or the logic of the State's position. *N.J.S.A.* 2C:35–14 does not establish and indeed does not even mention Drug Courts. The basic objective of *N.J.S.A.* 2C:35–14 is to allow deserving prison-bound addicted offenders the opportunity for "special probation," an opportunity to recover from the throes of their addiction and the cycle of their involvement with the criminal justice system. *N.J.S.A.* 2C:35–14 does not suggest that addicted offenders whose crimes do not mandate a prison sentence and who are eligible for probation under *N.J.S.A.* 2C:45–1 should not be accorded the same judicial resources to spur their rehabilitation as those who are facing incarceration. Surely, if defendant is to receive a probationary term conditioned on in-patient treatment and intensive supervision, it is preferable that defendant be monitored within a specialized court with personnel who have the particularized skills and training to maximize the prospect of the offender's rehabilitation.

III.

A.

We begin by describing the nature of Drug Courts and the positive role they play within our judicial system. Drug Courts are specialized courts within the Superior Court that target drug-involved "offenders who are most likely to benefit from treatment and do not pose a risk to public safety." *Drug Court Manual,*

*supra*, at 3. Those courts address the seemingly intractable social problem presented by the scourge of drugs that has devastated countless families and is the source of so many collateral crimes. *See id.* at 1–2. What distinguishes Drug Courts from other courts is the "oversight and personal involvement of the drug court judge in the treatment process." *Id.* at 3. A team approach is a distinctive feature of Drug Court. The judge leads court staff, probation officers, treatment counselors, substance abuse evaluators, and the prosecutor and defense attorney to monitor a participant's recovery. *Ibid.* Participants in drug court programs are subject to intensive supervision, frequent drug testing, and regular court appearances, combined with treatment and recovery services. *Id.* at 3–4.

Drug Courts have achieved notable success. Within three years of finishing a drug court program, only fourteen percent of drug court graduates were arrested for new indictable crimes. Administrative Office of the Courts, *Overview of the Adult Drug Court Program: Presentation to the New Jersey Commission to Review Criminal Sentencing, Success of NJ Adult Drug Courts* (Feb. 15, 2006), http://www.sentencing.nj.gov /downloads/2-06_sentencing_commission.ppt# 292,28, SuccessofNJAdultDrugCourts. In comparison, a fifteen-state study found that 67.5 percent of offenders released in 1994 had been rearrested within three years of release. Patrick A. Langan & David J. Levin, Bureau of Justice Statistics Special Report, *Recidivism of Prisoners Released in 1994* 1 (June 2002). Ninety-five percent of drug tests taken by New Jersey program participants produced negative results, and at the time of graduation, ninety-three percent of the participants were employed. Administrative Office of the Courts, *New Jersey Adult Drug Court Program: New Jersey Statistical Highlights* (Apr.2007), http://www.judiciary.state.nj.us/drugcourt/nj_stats.htm. Drug court programs are credited with helping participants give birth to drug-free babies and regain custody of their children. *Ibid.*

Additionally, the State realizes substantial cost-savings through drug court programs. The average cost per year to house an inmate in state prison is $34,218 compared to $17,266 to give that same offender the rehabilitative services of Drug Court, including six months of in-patient treatment. New Jersey Judiciary, *Drug Courts: A Plan for Statewide Implementation* (Dec.2000).

Those few statistics show the obvious benefits of our drug court programs.

### B.

This Court is vested with the exclusive authority under the New Jersey Constitution to administer the courts of this State. *N.J. Const.* art. VI, § 2, ¶ 3; *In re P.L. 2001, Chapter 362*, 186 *N.J.* 368, 381–82, 895 *A.*2d 1128 (2006). Our State Constitution provides that the Law Division "shall have such other parts, consist of such number of judges, and hear such causes, as may be provided by rules of the Supreme Court." *N.J. Const.* art. VI, § 3, ¶ 3. In accordance with that provision, our court rules divide the Law Division into a criminal part and a civil part. *See R.* 1:37–3.

Drug Courts are a creature of the judiciary. As a subpart of the criminal part of the Law Division, Drug Courts are subject to the constitutional purview of this Court, which executes its policies through the Administrative Office of the Courts.[3] Drug Courts became operational on an experimental basis in certain counties during the mid–1990s, focusing judicial resources to deal with drug-dependent offenders who were overburdening the criminal justice system. *Drug Court Manual, supra,* at 5–6. In 1997, the AOC, in association with the executive branch, initiated a drug court program with the assistance of state and federal funds. *Id.*

---

[3] The New Jersey Constitution authorizes the Chief Justice of the Supreme Court to appoint an Administrative Director of the court system. *N.J. Const.* art. VI, § 7, ¶ 1. The Administrative Director is responsible for the enforcement of the Supreme Court's rules, directives, and policies relating to administration. *R.* 1:33–3.

at 5.  In the following years, Drug Courts were developed in Camden, Passaic, Essex, Union, and Mercer Counties, diverting drug-dependent prison-bound defendants into rehabilitation programs.  *Ibid.*

In June 2000, the Judicial Council—a committee consisting of the Chief Justice, the Administrative Director, the Deputy Administrative Director, the State's assignment judges, and certain presiding judges—recommended the adoption of Drug Courts as a "best practice" in the criminal part, and shortly afterwards the AOC began implementation of drug court programs on a statewide basis.  *Id.* at 6.  In September 2001, the Legislature appropriated funding to the AOC for staff and other costs associated with the operation of Drug Courts.  *See L.* 2001, c. 243.  Funding was also appropriated for six additional Superior Court judgeships to serve in those courts, and for in-patient and out-patient substance abuse treatment for criminal offenders.  *Ibid.*

In July 2002, pursuant to Directive # 2–02, the AOC promulgated the *Drug Court Manual.  See* Administrative Office of the Courts, Directive # 2–02 (July 22, 2002), *available at* http://www. judiciary.state.nj.us/directive/criminal/dir_02_02.pdf.  The *Drug Court Manual* was intended to implement "uniform statewide eligibility criteria" to ensure the equitable operation of the Drug Court program throughout the State.  *Ibid.*  The *Manual* provides two separate paths for admission into Drug Court. Offenders must either satisfy the eligibility requirements for "special probation" set forth in *N.J.S.A.* 2C:35–14, or "otherwise be eligible under other sections of the Code of Criminal Justice." *Drug Court Manual, supra,* at 10.  The *Manual* clearly applies to both "state prison-bound offenders" and "non prison-bound offenders." *Id.* at 9.

For Drug Court admission under *N.J.S.A.* 2C:35–14, the *Manual* echoes the statutory eligibility requirements for "special probation," noting that the statute provides an alternative to imprisonment for offenders subject to a presumption of incarceration pursuant to *N.J.S.A.* 2C:44–1d or to a mandatory prison term

pursuant to *N.J.S.A.* 2C:35–7. *Id.* at 10–15.[4] Those offenders entering Drug Court through *N.J.S.A.* 2C:35–14 must serve a five-year period of "special probation." *Id.* at 14. Given that an offender is being diverted from a prison sentence, admission into Drug Court under *N.J.S.A.* 2C:35–14 is generally conditioned on prosecutorial consent. *Id.* at 13. A trial judge may admit an offender into Drug Court over the prosecutor's objection only if the judge finds a "gross and patent abuse of prosecutorial discretion." *Ibid.* As mentioned earlier, defendant's prior third-degree convictions made him ineligible for Drug Court pursuant to *N.J.S.A.* 2C:35–14. *See id.* at 11.

The *Manual* specifically lays out a second track for Drug Court admission, stating that "[s]ubstance abusing nonviolent offenders who are not subject to *N.J.S.A.* 2C:35–14 are also eligible for drug court disposition under the general sentencing provisions of the Code of Criminal Justice." *Id.* at 16. On this track, an offender is eligible for Drug Court sentencing if:

a. the person has a drug or alcohol dependence, as determined by a diagnostic assessment and substance abuse treatment and monitoring is likely to benefit the person; and

b. the person has not been previously convicted or adjudicated delinquent for, and does not have a pending charge of murder, aggravated manslaughter, manslaughter, robbery, kidnapping, aggravated assault, aggravated sexual assault or sexual assault, or a similar crime under the laws of any other state or the United States; and

c. the person did not possess a firearm at the time of the present offense and has no history of possession of a firearm during an offense; and

d. no danger to the community is likely to result from the person being placed on probation.

[*Ibid.*]

■ Although first-degree offenders are ineligible for Drug Court under either track one or two, under the second track, even second-degree offenders are disqualified. *Id.* at 12, 17. Unlike sentencing under *N.J.S.A.* 2C:35–14, the second track follows the

---

4 Offenders convicted or adjudicated delinquent of a first-degree offense are not eligible for "special probation" or Drug Court. *Drug Court Manual, supra,* at 12 (citing *N.J.S.A.* 2C:35–14b).

Code's general sentencing provisions and allows the court to impose a probationary term not to exceed five years in accordance with *N.J.S.A.* 2C:45–2.[5] *See id.* at 17. "The length of drug court supervision is left to the discretion of the drug court judge and unlike cases sentenced under *N.J.S.A.* 2C:35–14 early termination of probation supervision is an option that the drug court team may consider." *Id.* at 18.

The *Manual* provides that under this approach "[t]he exact structure of the treatment [whether in-patient or out-patient] is based on the need of the offender as determined by a diagnostic assessment." *Id.* at 17. It bears mentioning that a sentencing court is statutorily authorized to impose "reasonable conditions" of probation in accordance with *N.J.S.A.* 2C:45–1a. The court's options under a probationary sentence include ordering an offender "[t]o undergo available medical or psychiatric treatment and to enter and remain in a specified institution, when required for that purpose" and setting "any other conditions reasonably related to the [offender's] rehabilitation." *N.J.S.A.* 2C:45–1b(3), (12). *See State v. Cullen*, 351 *N.J.Super.* 505, 508, 799 *A.*2d 23 (App.Div. 2002) (noting that conditions of probation may include random urine screens, enrollment in substance abuse program, and attendance at weekly Alcoholics Anonymous meetings).

---

[5] The Code of Criminal Justice gives a court various options in sentencing an offender, which include the imposition of a term of imprisonment or probation. *See N.J.S.A.* 2C:43–2. If an offender has been convicted of a first- or second-degree crime, he is subject to a presumption of incarceration, which may only be overcome if the court "is of the opinion that ... imprisonment would be a serious injustice which overrides the need to deter such conduct by others." *N.J.S.A.* 2C:44–1d. Conversely, if a first-time offender is convicted of a crime other than one of the first or second degree, he is subject to a presumption of *non*-incarceration. *N.J.S.A.* 2C:44–1e. If, as in this case, a defendant is convicted of third- and fourth-degree crimes, but has a prior record, he is not subject to either presumption. *See State v. Pineda*, 119 *N.J.* 621, 622–23, 575 *A.*2d 855 (1990). When that occurs, the sentencing court "must weigh the aggravating and mitigating factors" enumerated in *N.J.S.A.* 2C:44–1a and b "to determine whether a probationary or custodial sentence is appropriate." *State v. Baylass*, 114 *N.J.* 169, 173, 553 *A.*2d 326 (1989).

In light of the track two criteria, defendant is eligible for Drug Court. He is drug dependent and not charged with a disqualifying crime; he did not possess a firearm in commission of the current or any previous offenses; and the trial court found that a probationary term would not likely endanger the community.

## IV.

Because Drug Courts are a part of the judicial branch of government and subject to the constitutional authority of the New Jersey Supreme Court, which is empowered to determine which cases may be heard in a particular part of the Superior Court, we could end our analysis. Nonetheless, we next briefly turn to the State's argument that the Legislature, in enacting *N.J.S.A.* 2C:35–14 in 1987 as part of the Comprehensive Drug Reform Act of 1987, *L.* 1987, *c.* 106, intended to limit the class of cases assigned to Drug Courts.

Significantly, the term "Drug Court" nowhere appears in *N.J.S.A.* 2C:35–14 or any of the later amendments to that statute. The purpose of the statute was not to establish a stand-alone court to handle drug cases but rather to craft a new disposition alternative that allowed a court to divert prison-bound defendants into an intensively monitored and long-term program of rehabilitation.

In 1999, the Legislature amended *N.J.S.A.* 2C:35–14 to widen the availability of probation to drug-dependent offenders who committed crimes other than drug possession and distribution. The earlier version of *N.J.S.A.* 2C:35–14 limited the probation option only to offenders convicted of drug crimes. *L.* 1987, *c.* 106, at 18–19. The amended statute introduced the term "special probation," which carries a five-year period of intensive supervision for those diverted from prison sentences. *N.J.S.A.* 2C:35–14a.

Clearly, the reasons that gave rise to *N.J.S.A.* 2C:35–14— the need to address in a new and innovative way the problem of drug-dependent offenders caught in a never-ending cycle of in-

volvement in the criminal justice system—are the same that animated the judiciary's creation of Drug Courts. *N.J.S.A.* 2C:35–14 and Drug Courts serve complementary purposes. However, nothing in the statutory language of *N.J.S.A.* 2C:35–14 or its legislative history suggests that the Legislature presumed to erect its own specialized court within the Superior Court. Likewise, the judiciary in establishing Drug Courts has not presumed to conceive a sentencing disposition not already found in the Code of Criminal Justice. *See State v. Soricelli,* 156 *N.J.* 525, 538, 722 *A.*2d 95 (1999) ("The judiciary does not determine the punishment for crimes. That is up to the Legislature." (citation and internal quotation marks omitted)). The sentencing dispositions used by Drug Courts are *N.J.S.A.* 2C:35–14 and *N.J.S.A.* 2C:45–1. Although Drug Courts and *N.J.S.A.* 2C:35–14 are entirely compatible with each other, the New Jersey Supreme Court has the ultimate authority to fashion the criteria for admission into Drug Court.

Last, to the extent that it can be read to conflict with both the *Drug Court Manual* and this opinion, we specifically disapprove of *State v. Matthews,* 378 *N.J.Super.* 396, 402, 875 *A.*2d 1050 (App. Div.), *certif. denied,* 185 *N.J.* 596, 889 *A.*2d 443 (2005), which was partly relied on by the State. In *Matthews,* the defendant, who was charged with multiple third- and fourth-degree crimes, applied for admission into the drug court program. *Id.* at 398, 875 *A.*2d 1050. The prosecutor objected to defendant's admission, apparently based on his prior conviction for an offense similar to *N.J.S.A.* 2C:35–5a (prohibiting distribution and possession with intent to distribute CDS). *Id.* at 398, 401–02, 875 *A.*2d 1050. The trial court concluded that the prosecutor's objection was not a patent and gross abuse of discretion under *N.J.S.A.* 2C:35–14c and denied the defendant's application for enrollment in the drug court program. *Id.* at 398, 875 *A.*2d 1050. The court sentenced the defendant to three consecutive five-year terms, which included three consecutive parole disqualifiers of two-and-one-half years. *Ibid.* The Appellate Division affirmed. *Ibid.*

Although the defendant in *Matthews* conceded that under *N.J.S.A.* 2C:35–14 the prosecutor's objection was not a patent and gross abuse of discretion, he argued that the trial court had discretion to place him in a drug court program under *N.J.S.A.* 2C:45–1, which does not require prosecutorial consent. *Id.* at 402, 875 *A.*2d 1050. The Appellate Division reasoned that because the two statutes conflicted with each other as applied to the defendant's case, *N.J.S.A.* 2C:45–1, the general statute, had to give way to *N.J.S.A.* 2C:35–14, the specific statute. *Id.* at 402–03, 875 *A.*2d 1050. The Appellate Division found that inasmuch as the defendant was barred from participation in a drug court program under *N.J.S.A.* 2C:35–14, he could not be sentenced into such a program under *N.J.S.A.* 2C:45–1. *Id.* at 403–04, 875 *A.*2d 1050.

We have no reason to question the actual sentence imposed in *Matthews* because the trial court obviously concluded that probation in any form was not an appropriate disposition. Because the defendant was not convicted of a first- or second-degree crime, the trial court was not guided by a presumption of incarceration, and therefore the imposition of a prison term was within the court's discretion after weighing the aggravating and mitigating factors. *See N.J.S.A.* 2C:44–1. However, the Appellate Division's holding in that case suggests that the defendant, at least theoretically, could have been sentenced to probation under *N.J.S.A.* 2C:45–1—just not with a condition that imposed drug treatment. That proposition was rejected by the State at oral argument before this Court. We reject it as well.

It is inconceivable that the Legislature granted a trial court power to impose a probationary sentence, but not the power to attach the one condition necessary to address the offender's desperate needs—a drug rehabilitation program. *See State v. Lewis,* 185 *N.J.* 363, 369, 886 *A.*2d 643 (2005) ("[A] court should strive to avoid statutory interpretations that 'lead to absurd or unreasonable results.' " (quoting *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966))). *N.J.S.A.* 2C:45–1a states that once the trial court determines that probation is appropriate, it must impose

necessary and reasonable conditions. That "special probation" is unavailable pursuant to *N.J.S.A.* 2C:35–14 does not relieve the trial court of its obligation to impose the appropriate conditions of probation, including in-patient or out-patient drug rehabilitation, pursuant to *N.J.S.A.* 2C:45–1.

## V.

In conclusion, consistent with the *Drug Court Manual* and *N.J.S.A.* 2C:45–1, the trial court was vested with the discretion to admit defendant into Drug Court and to impose a probationary term with conditions that included defendant abiding by the "specific [drug] treatment plan determined by the [in-patient] facility and Drug Court Team." We therefore affirm the trial court's sentence and remand the matter to that court for proceedings consistent with this opinion.

*For affirmance and Remandment*—Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.