NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1098-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JESSICA S. MATRONGOLO,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
> **July 3, 2024**
> **APPELLATE DIVISION**

Argued June 4, 2024 – Decided July 3, 2024

Before Judges Gooden Brown, Natali and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Accusation No. 23-08-0676.

Melissa L. Baskind, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Melissa L. Baskind, of counsel and on the briefs).

David M. Liston, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

Kaili E. Matthews, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General,

attorney; Kaili E. Matthew, of counsel and on the brief).

American Civil Liberties Union of New Jersey Foundation, attorneys for amicus curiae American Civil Liberties Union of New Jersey (Alexander Shalom, Dillon Reisman, and Jeanne LoCicero, on the brief).

The opinion of the court was delivered by

NATALI, J.A.D.

In 2022, an estimated 7.4% of New Jersey adults—approximately 535,280 individuals—met the formal diagnosis criteria for abuse or dependence on illicit drugs and/or alcohol.[1] In that same year, although 45,914 people were admitted to substance use treatment in New Jersey, the Division of Mental Health and Addiction Services estimated the unmet demand for treatment was nearly double that number, or approximately 79,750 individuals.[2] And, in 2021, the State recorded a record high 3,144 unintentional drug overdose deaths.[3]

---

[1] Dep't of Human Servs., 2022 Inventory & Need Assessment for N.J. Behavioral Health 6. See also U.S. Census Bureau, Table S0101 Age and Sex – American Community Survey (2022) (calculating New Jersey's total adult population at 7,233,502 people).

[2] Dep't of Human Servs., 2022 N.J. Drug & Alcohol Use Treatment - Substance Use Overview Statewide 3, 17.

[3] Dep't of Health, 2022 N.J. SUDORS Overdose Mortality Data Explorer.

The substance abuse epidemic occurring in our communities, and the crime attendant to the disease of addiction led, in part, to the creation of Recovery Court,[4] a judicial program "which combats the hopelessness of addiction with the hopefulness of treatment." State v. Harris, 466 N.J. Super. 502, 510 (App. Div. 2021). Through "a highly specialized team process within the existing Superior Court structure," the Recovery Court judge, attorneys, probation representatives, and treatment professionals "work together to support and monitor a participant's recovery." Admin. Off. of the Cts., N.J. Statewide Recovery Court Manual (Jan. 2022) 3-4 (2022 Manual). Our Supreme Court has repeatedly recognized the positive role of Recovery Court in improving the lives of its participants and the community. See State v. Meyer, 192 N.J. 421, 429-30 (2007) and State v. Clarke, 203 N.J. 166, 174 (2010).

This appeal concerns defendant Jessica S. Matrongolo's[5] challenge to a Law Division order which categorically excluded her from this crucial resource because she was convicted of a petty disorderly persons (PDP) offense. The court reasoned that as a matter of law, Recovery Court is only

_____

[4] Until 2022, Recovery Court was known as Drug Court. Our opinion uses the earlier term when discussing authorities which pre-date the name change.

[5] As noted infra, Jessica died during the pendency of this appeal. We refer to her by her first name, intending no disrespect.

available to those convicted of a "crime," which, under our Criminal Code, disorderly persons (DP) and PDP offenses are not.[6]  Finding no support in the law for the court's decision, we reverse.

I.

Jessica was initially charged with third-degree attempt to defraud the administration of a drug test, N.J.S.A. 2C:36-10(d), and N.J.S.A. 2C:5-1(a)(1), and fourth-degree possession of a device to defraud the administration of a drug test, N.J.S.A. 2C:36-10(e).  Pursuant to a plea agreement, Jessica pled guilty to disorderly conduct, N.J.S.A. 2C:33-2(a)(2)—a PDP offense—in exchange for dismissal of the criminal charges and with the understanding that she would apply for Recovery Court.[7]

The court initially summarily denied her application without providing the parties an opportunity to present oral or written arguments.  After we granted leave to appeal and reversed, remanding for the court to "consider

---

[6]  Pursuant to N.J.S.A. 2C:1-4(a)(1), a "crime" refers to an offense that carries a term of at least six months imprisonment, or that is graded first-, second-, third- or fourth- degree.  "Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes within the meaning of the Constitution of this State."  N.J.S.A. 2C:1-4(b)(1).

[7]  The record reflects, on the date of these offenses, Jessica was already participating in Recovery Court.  It is unclear whether she was discharged from the program due to the filing of the new third- and fourth-degree offenses.

A-1098-23

[Jessica]'s application anew," it considered her application with the benefit of written briefing and oral arguments. The court again denied Jessica's application, this time explaining in an August 9, 2023 written decision that Recovery Court is not a sentencing option for those convicted of a DP or PDP offense, because neither are "crimes" as defined in our Criminal Code.

Jessica again sought interlocutory review, which we granted, prompting the trial judge to submit two written amplifications of his August 9, 2023 decision, dated December 7, 2023 and February 20, 2024, pursuant to Rule 2:5-1(b). In ruling that Recovery Court is only available to those convicted of a crime, the judge first drew support from a number of excerpts from the 2022 Manual. The first of which, the judge said, "sets out the program's mission: 'to stop the abuse of alcohol and other drugs and related criminal activity.'" The judge reasoned the Manual's drafters "notably chose the word criminal" and did so intentionally, as they repeated that term on page eight when they wrote: "The purpose of [R]ecovery [C]ourt is to divert defendants facing criminal charges with substance abuse problems into treatment." In the judge's view, "[t]hese two statements cement[ed] the drafters' intent; namely recovery courts are for people who commit crimes."

The judge recognized that the 2022 Manual also says that "a defendant is legally eligible for recovery court if he or she qualifies for sentencing to

5

special probation under N.J.S.A. 2C:35-14 (Track One)[,] or regular probation under N.J.S.A. 2C:45-1 (Track Two),"[8] but reasoned to read this language as permitting anyone eligible for probation to enter the program is to read the statement out of context. In the judge's view, this language "simply contrasts the two paths into the program: one through special probation and one through regular probation," but "does not displace the program's explicit objectives." The drafters further conveyed this intent, said the judge, by eliminating the words "offense" and "offender" from the current version of the Manual because those terms include DP and PDP offenses.

The judge further reasoned that since PDP offenses are most often heard in municipal court, permitting PDP offenders to enter Recovery Court would open the program to municipal court defendants, contrary to the Legislature's and the Manual's drafters' intent. Finally, relying upon State v. Bishop, 429 N.J. Super. 533 (App. Div. 2013), aff'd, 223 N.J. 290 (2015), the judge explained without the threat of imprisonment, which is not a sentencing option for a PDP offense beyond thirty days in jail, a person with a non-criminal conviction would have no incentive to comply with the conditions of Recovery Court.

---

[8] As detailed infra, an applicant may be eligible for Recovery Court through two paths, known as Track One and Track Two, which have separate and distinct eligibility criteria.

We invited the Attorney General and the American Civil Liberties Union of New Jersey (ACLU) to participate as amicus curiae, both of whom submitted briefs contending the court erred in denying Jessica's application to Recovery Court.

Subsequently, the parties informed us that Jessica tragically passed away at age thirty-one due to a suspected drug overdose. The State moved to dismiss the appeal as moot, which Jessica's counsel opposed, contending the case presented an issue of significant public importance likely to recur. We denied the motion "without prejudice to consideration of the issue by the merits panel on plenary review." We therefore begin by considering whether this appeal should be dismissed as moot, a question we answer in the negative.

II.

When a judicial decision "can have no practical effect on the existing controversy," an issue is rendered moot. State v. Nieves, 476 N.J. Super. 609, 657 (App. Div. 2023) (quoting Redd v. Bowman, 223 N.J. 87, 104 (2015)). As our Supreme Court explained, "the New Jersey Constitution does not confine the exercise of the judicial power to actual cases and controversies," so mootness does not necessarily end a case. State v. Gartland, 149 N.J. 456, 464 (1997). Generally, however, we "will not render advisory opinions or exercise [our] jurisdiction in the abstract." Ibid.

A-1098-23

Although "[t]he power to entertain a criminal appeal even after death should be sparingly exercised," in certain circumstances, we nevertheless adjudicate such a case. Id. at 465. "Our courts will entertain a case that has become moot when the issue is of significant public importance and is likely to recur." Id. at 464; see also State v. Cassidy, 235 N.J. 482, 491 (2018) (declining to dismiss as moot appeal involving deceased defendant because case implicated reliability and admissibility of over 20,000 Alcotest breath samples).

We are convinced the issue presented in this appeal holds "significant public importance and is likely to recur." Gartland, 149 N.J. at 464. The matter is one of first impression with a significant impact on applicants to Recovery Court and judges who preside over those matters. As noted, hundreds of thousands of New Jersey citizens suffer with substance abuse or dependence, many of whom are involved in the criminal legal system, and overdose deaths reached a record high in 2021. At the same time, and as the ACLU has ably argued in its merits brief, access to potentially life-saving treatment is severely limited. The question of whether a person convicted of a DP or PDP offense is eligible to seek that treatment through Recovery Court is one with a significant effect far beyond Jessica. Further, because the court's decision was based not on Jessica's individual circumstances but on the

classification of her conviction, it is likely to recur whenever an individual with only a DP or PDP conviction seeks to enter Recovery Court. Therefore, we conclude this case is justiciable and address the merits.

III.

Jessica argues the court erred in concluding she was ineligible for Recovery Court solely based on her PDP conviction. She maintains the court's decision was not supported by the legal eligibility provisions in the 2022 Manual nor the trend toward expanded access to Recovery Court. The Attorney General as amicus agrees, noting those convicted of DP and PDP offenses in Superior Court are eligible for probation under N.J.S.A. 2C:45-1 and therefore for Recovery Court under a proper reading of the 2022 Manual and relevant case law. Amicus ACLU concurs but emphasizes Recovery Court and similar programs may redirect resources away from quality community-based treatment untethered to the criminal legal system.

Jessica and both amici also maintain the court incorrectly concluded PDP offenders lack an incentive to complete Recovery Court because they do not face a lengthy prison sentence. Jessica argues an alternative sentence is not required under the 2022 Manual, and the court "fails to appreciate" the numerous other motivations for Recovery Court participants, such as the genuine desire to overcome substance abuse, the opportunity to expunge one's

9

criminal records, or the structure and support provided by the program. The Attorney General points out the court's reliance on Bishop was misplaced, as that case considered Track One Recovery Court applicants "who, by definition, face an alternative prison sentence." The ACLU adds no empirical studies reflect the threat of incarceration has any effect on drug court participation or success.

In requesting we affirm, the Prosecutor argues the court correctly found Recovery Court was not intended for PDP offenders despite conceding "neither the [2022 Manual] nor the governing statute, N.J.S.A. 2C:35-14, expressly disqualifies from [R]ecovery [C]ourt a defendant who has only been found guilty of a [PDP] offense." It agrees with the court the "carrot-and-stick approach" used in Recovery Court would not function as effectively without the "stick" of an alternative prison sentence. Further, the Prosecutor contends expanding Recovery Court to DP and PDP offenses would "open the proverbial flood gates" to municipal court defendants and "far more participants than recovery courts were created to handle." For the following reasons, we disagree with each of the Prosecutor's points and reverse.

We briefly address the standard governing our review. Because the appeal asks us to construe the Recovery Court eligibility criteria as set forth in the 2022 Manual, a question of law, our review is de novo. State v. Figaro,

A-1098-23

462 N.J. Super. 564, 571 (App. Div. 2020); State v. Amer, 471 N.J. Super. 331, 355 (App. Div. 2022).  Accordingly, we give "no deference to the trial court's 'interpretation of the law and the legal consequences that flow from established facts.'"  State v. Maurer, 438 N.J. Super. 402, 411 (App. Div. 2014) (quoting State v. Bradley, 420 N.J. Super. 138, 141 (App. Div. 2011)).

As noted, we find no support for the judge's decision in the historical development of Recovery Court as conveyed in statute, the Manual, and court decisions interpreting both.  As a full understanding of the development and evolution of Recovery Court informs our decision, we detail that history.

Recovery Court is not a creature of the Legislature, but of the judiciary, and was developed in accordance with the Court's "exclusive authority under the New Jersey Constitution to administer the courts" and "execute[] its policies through the Administrative Office of the Courts" (AOC).  Meyer, 192 N.J. at 430 (citing N.J. Const. art. VI, § 2, ¶ 3 and In re P.L. 2001, Chapter 362, 186 N.J. 368, 381-82 (2006)).  While Recovery Court is a sentencing option, and thus rooted in legislative enactment, it is "a subpart of the criminal part of the Law Division," and its eligibility criteria are a matter of judicial policy expressed through AOC Directive and the Manual.  Meyer, 192 N.J. at 430-31; see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R.

1:1-1 (2024) (discussing the Court's authority over practice and procedure of the courts).

In the mid-1990s, the AOC developed the first Drug Court pilot program to be administered through probation in certain counties "on an experimental basis." Meyer, 192 N.J. at 430. The program was intended to create a better way of dealing with the rising number of prison-bound drug offenders than the traditional approach of "incarceration and more incarceration," which "was not working." 2022 Manual at 3-4. People of color were "hit the hardest" as "a disproportionate percentage of inmates in the New Jersey state prison system have been and are minorities." Id. at 4. In addition to the "skyrocket[ing]" cost of incarcerating drug offenders, the "devast[ing]" effect of drug abuse and related crime on families and communities was evident in "drug addicted newborns, children in foster care, violence in neighborhoods, unsafe streets and unpaid child support." Id. at 3.

The pilot program proved beneficial, and in May 2000, the Conference of Criminal Presiding Judges recommended its adoption as a "best practice" within the Criminal Division statewide. Admin. Off. of the Cts., Manual for Operation of Adult Drug Courts in N.J. (July 22, 2002) 6 (2002 Manual). Subsequently, the Judicial Council adopted Drug Courts as best practices and "called for a comprehensive statewide proposal," which was drafted in

December 2000 and implemented through legislation enacted in September 2001. Ibid. By 2004, Drug Courts were operating in every vicinage. Id. at 8.

Initially, the pilot program's target population was "nonviolent substance abusing defendants." Id. at 5. To ensure "equal access" to the program, however, "the Presiding Judges recommended that the [D]rug [C]ourt caseload consist of prison-bound and other cases." Id. at 6. As the "primary focus of the funding" for Drug Court was to provide "an alternative to prison," the 2002 Manual contemplated caseloads would consist of 73% prison-bound cases and 27% non-prison-bound cases. Id. at 8.

In accordance with those goals, the 2002 Manual set forth eligibility criteria for two tracks for admission into the program. See Meyer, 192 N.J. at 432-33 (discussing the "two tracks" to Drug Court; one through special probation and the other through regular probation). Consistent with their present eligibility criteria, Track One was available to defendants "subject to a presumption of incarceration" who were eligible for "special probation" under N.J.S.A. 2C:35-14, and Track Two was available to defendants who were not prison-bound, but faced a sentence to regular probation or fewer than 365 days in a county jail. 2002 Manual at 9-10. Those who pled guilty to a probation violation or were terminated from the Pretrial Intervention program were also eligible for Track Two. Id. at 9. The 2002 Manual permitted application to

13

Drug Court "at any time following an arrest and up until plea cutoff," but encouraged intervention as early as possible in the process. Id. at 19.

Pursuant to the 2002 Manual, in order to be sentenced to Drug Court on Track Two,[9] an applicant must have met the following criteria: (1) a diagnostic assessment determined the applicant had "a drug or alcohol dependence"; (2) the program would be "likely to benefit" the applicant; (3) the applicant had no pending charges or previous conviction or adjudication for murder, aggravated manslaughter, manslaughter, robbery, kidnapping, aggravated assault, aggravated sexual assault, or sexual assault; (4) the charges included no first- or second-degree crime; (5) the applicant did not "possess a firearm" during the underlying crime or any prior offense; and (6) the applicant would not pose a danger to the community while serving a term of Drug Court. Id. at 16-17. These requirements largely tracked those found in the special probation statute at the time. See N.J.S.A. 2C:35-14 (2001). Aside from the enumerated disqualifying crimes, eligibility was not limited by the nature or classification of the charges.

After the AOC released the 2002 Manual, it did not amend the Manual until 2019. In the intervening years, the Legislature amended N.J.S.A. 2C:35-

---

[9] Because it is undisputed Jessica was not subject to a presumption of incarceration and thus ineligible as a Track One participant, we focus our discussion exclusively on Track Two eligibility.

four times, with two of those expanding the class of those eligible for special probation and thus Recovery Court. See L. 2008, c. 15 (removing automatic exclusion for those with multiple prior third-degree convictions); L. 2012, c. 23 (removing robbery and burglary from list of disqualifying offenses and limiting exclusion based on prior convictions to first-degree offenses).

The 2019 Manual formally identified the two paths as Track One and Track Two and amended the eligibility criteria such that they were far less restrictive. Admin. Off. of the Cts., N.J. Statewide Drug Court Manual (June 2019) 9 (2019 Manual). Specifically, it removed the six requirements enumerated in the 2002 Manual and instead provided a defendant is "legally eligible for [D]rug [C]ourt if he or she qualifies for sentencing to special probation under N.J.S.A. 2C:35-14 (Track One) or regular probation under N.J.S.A.2C:45-1 (Track Two)." Ibid. It also clarified a "defendant who initially is not eligible for [D]rug [C]ourt could become eligible by way of a plea agreement that dismisses the non-[D]rug [C]ourt eligible charges" or "upon acquittal of a charge that initially rendered the applicant ineligible." Ibid. Further, prior entry to the program would no longer result in automatic rejection. Id. at 10. Again, the criteria made no mention of ineligibility based on a defendant's conviction only for a DP or PDP offense.

A-1098-23

The AOC again amended the Manual in 2020, reiterating Track One applied to special probation candidates, while Track Two applied to regular probation candidates, but making no substantive change to the eligibility requirements. Admin. Off. of the Cts., N.J. Statewide Drug Court Manual (Dec. 2020) 9 (2020 Manual). In 2022, the AOC published the current version of the Manual, which changed the name of the program to Recovery Court but again made no change to the legal eligibility provisions of the 2019 and 2020 Manuals. 2022 Manual at 9.

While the Manual defines eligibility for regular probation by reference to N.J.S.A. 2C:45-1, that statute does not detail which defendants may be sentenced to probation but rather sets forth permissible conditions of probation. In doing so, it uses the term "offense" rather than crime, and specifically carves out DP offenses when discussing split sentences to probation and incarceration. N.J.S.A. 2C:45-1. Other provisions of our Criminal Code make clear defendants convicted of DP or PDP offenses generally may be sentenced to probation. See N.J.S.A. 2C:43-2(b)(2), (g) (permitting court to sentence "a person who has been convicted of an offense" to probation, except certain sex offenses). Further, the special probation statute expressly provides "[n]othing in this section shall be construed to prohibit a person who is eligible for probation in accordance with N.J.S.A.

A-1098-23

2C:45-1 due to a conviction for an offense which is not subject to a presumption of incarceration . . . from applying for treatment for substance use disorder as a condition of probation."  N.J.S.A. 2C:35-14(a).

Our case law similarly demonstrates a repeated intent to expand access to Recovery Court.  In Meyer, the Supreme Court rejected the State's argument that only those eligible for special probation under N.J.S.A. 2C:35-14 could enter Recovery Court.  192 N.J. at 423-24.  In Maurer, we modified the eligibility criteria for Track Two applicants in the 2002 Manual to conform to the 2012 amendment to N.J.S.A. 2C:35-14 which expanded access for Track One applicants.  438 N.J. Super. at 417-18.  In Figaro, we concluded the statutory criteria and exclusions for Track One applicants did not govern Track Two applicants, but could be considered in the court's discretion.  462 N.J. Super. at 578-79.  And in Harris, we noted an interpretation of the 2012 amendment to the special probation statute "that would have the practical effect of restricting access to Drug Court contravenes the legislative purpose," the "overarching goal" of which was "to enlarge, not reduce, the pool of defendants who could participate in Drug Court."  466 N.J. Super. at 545.

We are satisfied the foregoing reveals a lack of support for the court's conclusion a defendant is ineligible for Recovery Court if the underlying conviction is for a DP or PDP offense.  The eligibility requirements for the two

17

tracks are clear and simple: Track One applies to those eligible for special probation and Track Two applies to those eligible for regular probation. 2022 Manual at 9. As we recently explained:

> Every candidate falls under one of two distinct and mutually exclusive tracks. To determine legal eligibility, the trial court must first determine whether the defendant is a Track One or Track Two candidate.
>
> A defendant is a Track One candidate if, and only if, he or she is presently subject to the presumption of imprisonment in N.J.S.A. 2C:44-1(d) or to a mandatory term of parole ineligibility. If the defendant is not presently subject to the presumption of imprisonment as defined in N.J.S.A. 2C:44-1(d) or to a mandatory term of parole ineligibility, he or she is a Track Two candidate.
>
> [Harris, 466 N.J. Super. at 551.]

The Prosecutor points to no law, decision, or directive, nor has our independent research uncovered any, that adds to the Track Two criteria the condition that the person be sentenced for a "crime."

Further, contrary to the court's decision, a plain reading of the legal eligibility provision of the Manual demonstrates it was not "simply contrast[ing] the two paths into the program." Rather, the Manual's drafters clearly titled the section "Legal Eligibility" and declined to condition eligibility on any other requirements. The fact that the program originated from a desire to reduce the number of prison-bound drug offenders does not

18

negate the clearly defined legal eligibility requirements for the two tracks, eligibility for special or regular probation, which have remained consistent. As noted, since its inception, Recovery Court has always encompassed both prison-bound and non-prison-bound defendants.

The court also placed undue emphasis on the conviction for which the person is being sentenced. As the Manual makes clear, early intervention is encouraged and the court may admit a person to Recovery Court without a guilty plea in place. Here, Jessica was charged with third- and fourth-degree crimes and she could have applied for Recovery Court based on these charges. As the Manual makes clear, a defendant may plea bargain to become eligible for Recovery Court, conveying an intent to permit more—not fewer—applicants. Pursuant to a plea agreement, Jessica reduced her charge to a PDP offense. It is inconsistent with the spirit of Recovery Court that someone who is eligible for Track Two based on their initial charges would become ineligible because the State agrees to accept a plea to a lesser charge.

The court's reliance on the removal of the term "offender" in amendments to the Manual is also misplaced. The drafters replaced "offender" with "defendant," a more neutral term which clearly describes anyone charged with a criminal or non-criminal offense. We fundamentally disagree with the conclusion the drafters sought to convey an intent to exclude DP and PDP

19

A-1098-23

offenders based on such a subtle change in the face of clearly expressed eligibility criteria which included no such provision.

We are similarly unpersuaded by the court's and the Prosecutor's concerns that permitting DP and PDP offenders to enter Recovery Court would unduly expand eligibility to municipal court defendants. Jessica was within the jurisdiction of the Superior Court and was not being sentenced in municipal court. Thus, whether she, or anyone else, could enter Recovery Court in municipal court was plainly not at issue, and should not have impaired the court's analysis.

Finally, we reject the court's conclusion that defendants not subject to incarceration would have no incentive to succeed in Recovery Court. Bishop, upon which it relied, made clear that it "d[id] not deal with those admitted to Drug Court under the regular probation track" but rather "only with offenders sentenced to special probation under N.J.S.A. 2C:35-14, whose probation is subsequently permanently revoked." 429 N.J. Super. at 540. To accept the court's rationale would essentially negate Track Two eligibility and the historical composition of Recovery Court as both prison-bound and non-prison-bound defendants, instead limiting the program to those facing a presumption of incarceration. That is contrary to the explicit eligibility criteria, the case law, and the spirit of Recovery Court.

A-1098-23

Not only was Jessica not a Track One applicant, but the court also failed to consider the various behavioral modification techniques and rewards for progress that Recovery Court uses to encourage compliance. 2022 Manual at 25-26 ("The most effective and successful drug courts utilize a varied and creative range of intermediate-magnitude responses to participants' behavior that can be adjusted up or down in intensity in response to continued violations or successes. Sanctions and rewards tend to be least effective at the lowest and highest levels."); see also Admin. Off. of the Cts., Admin. Directive #03-20, Drug Court – State of N.J. Adult Drug Court Program – Participant Incentive & Sanction Charts (Jan. 3, 2020) (providing matrix for identifying level of behavior and necessary response, such as increasing or decreasing required contacts with probation or community service hours). While sanctions were initially stressed to address violations, the approach has changed over the years to encourage positive behavior as opposed to punishing negative behavior. As Jessica explained in her merits brief, people entering Recovery Court may have various reasons for doing so, including the possibility of expungement or a true desire to overcome substance abuse.

Jessica's untimely death highlights the pressing need for life-saving resources to combat substance abuse in New Jersey. Our opinion clarifies individuals convicted of DP and PDP offenses in Superior Court are not

21

categorically barred from seeking those resources.  The court erred in holding otherwise.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22