NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3527-13T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GREGORY MAURER, a/k/a GREGORY M.
MAVERER,

     Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **December 17, 2014** |
| **APPELLATE DIVISION** |

Argued October 15, 2014 – Decided  December 17, 2014

Before Judges Lihotz, Espinosa and
Rothstadt.

On appeal from the Superior Court of New
Jersey, Law Division, Gloucester County,
Indictment Nos. 12-10-1016, 12-11-1100,
12-11-1174; and Burlington County,
Indictment No. 13-03-0219.

Fred B. Last, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender,
attorney; Mr. Last, of counsel and on the
brief).

Joseph M. More, Jr., Assistant Prosecutor,
argued the cause for respondent (Sean F.
Dalton, Gloucester County Prosecutor,
attorney; Mr. More, on the brief).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

We granted defendant Gregory Maurer leave to appeal from the Law Division's January 15, 2014 denial of his appeal from the prosecutor's rejection of his application for sentencing into Drug Court. The prosecutor's and the court's decisions were based solely on defendant's prior conviction for a weapons crime and ostensibly made in accordance with N.J.S.A. 2C:35-14 (the Drug Court Statute)[1] and the Administrative Office of the Courts' (AOC) "Manual for Operation of Adult Drug Courts in New Jersey" (July 2002) (Manual). On appeal defendant argues:

> I. THIS COURT MUST [] REVERSE TO CORRECT A SERIOUS ANOM[A]LY IN DRUG COURT ADMISSION REQUIREMENTS, TO FOSTER MORE CONSISTENT SENTENCING, AND TO SEE THIS DEFENDANT SENTENCED TO DRUG TREATMENT AND NOT PRISON.
>
> > A. Sentencing under the Criminal Code is offense[-]based.
> >
> > B. Sentencing in Drug Court remediates the harshness of offense-based sentencing.
> >
> > C. The standards for admitting Track II defendants are now functionally more restrictive than those for Track I defendants, creating an anomaly and unacceptable disparities in sentencing requiring that they be modified to conform to the current law as

---

[1] The statute does not mention a "drug court," but rather establishes "special probation" applicable for certain drug offenses, as discussed further, infra.

other requirements have by
practice.

D. Defendant, who would qualify for
Track I admission but for the fact
that he is not charged with crimes
sufficiently serious for Track I
admission, should be admitted for
fulfilling the historically more
stringent requirements for Track I
admission.

E. The facts underlying the prior
conviction do not implicate the
Manual's exclusion.

F. Defendant's participation in the
Drug Court would not present
danger to the community.

In response, the State argues the court properly rejected

defendant's Drug Court application because the court's decision

was "consistent with current Drug Court sentencing guidelines as

outlined in N.J.S.A. 2C:35-14 and in the [] Manual" as defendant

was "not legally eligible for Drug Court special probation."

The parties' dispute required us to consider their

arguments in light of the record, as well as the history of New

Jersey's successful Drug Court program, the application of the

Manual's guidelines, and the Drug Court statute as recently

amended. Having done so, we reverse the January 15, 2014 order

and remand the matter to the Law Division for further

consideration of defendant's application consistent with our opinion.

I.

At the time of his April 2013 Drug Court application, defendant was twenty-five years old, had a history of several controlled dangerous substance (CDS) offenses and was the subject of four pending, separate indictments. In 2012, a Gloucester County Grand Jury returned one indictment, charging defendant with third-degree possession of CDS (oxycodone), N.J.S.A. 2C:35-10(a)(1); another indictment, charging him with two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (oxycodone and heroin); and a third, charging him with third-degree possession of CDS (cocaine), N.J.S.A. 2C: 35-10(a)(1). In 2013, a Burlington County Grand Jury returned an indictment, charging him with two counts of third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a); one count of fourth-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4); and one count of third-degree burglary, N.J.S.A. 2C:18-2(a)(1). He had also been charged with the disorderly person offense of possession with intent to use a hypodermic syringe, N.J.S.A 2C:36-6(a).

Defendant's criminal history included crimes related to his drug use. In 2007, he was convicted of possession of CDS

4

(cocaine), sentenced to probation, which he subsequently violated. The reviewing judge found defendant violated probation because he was charged with possession of a weapon, N.J.S.A. 2C:39-5(b) and imposed a term of imprisonment. The arrest that led to the charge occurred on December 1, 2008, while police officers were conducting a surveillance of an area in Camden known for its open drug activity. Police observed defendant arrive by car, driven by another, and engage in a suspected drug transaction. When police detained defendant, he stated a gun was in the vehicle, but it did not belong to him. The police located the gun, determined it had been stolen and charged defendant with possession of the handgun and hollow point bullets, as well as receiving stolen property.

According to police, while defendant and the driver were waiting to be processed, defendant tried to convince the driver to take responsibility for the weapon as defendant was concerned he could get a lengthy prison term because of his prior record, while the driver would not receive as harsh a sentence because he had no prior convictions. Consequently, police charged defendant with witness tampering, N.J.S.A. 2C:28-5.

Defendant pled guilty to a second-degree weapons possession offense and was sentenced, in the third-degree range, to a three-year prison term, subject to a one-year period of parole

ineligibility, pursuant to the "Graves Act," N.J.S.A. 2C:43-6, -6.2. The remaining charge was dismissed.

Following release from prison, defendant committed three CDS offenses prior to the return of the Gloucester and Burlington County indictments. Each of these offenses was remanded to municipal court for disposition.

While awaiting disposition, defendant was held in the Burlington County jail, where he entered into substance abuse counselling programs, including Narcotics Anonymous. He posted bail on November 8, 2013 and applied for admission to Drug Court in Gloucester County. Defendant asserts his attorney secured a commitment to consolidate the Burlington County charges with the Gloucester County charges, if he were admitted into Drug Court.

When defendant's appeal of the prosecutor's denial of his request for Drug Court admission in Gloucester County was considered, defendant was not only receiving counselling, but also employed as an outreach counselor for a drug treatment facility in Florida. The Gloucester County prosecutor rejected defendant's application, citing his prior weapons offense, and defendant appealed to the Law Division.

On January 15, 2014, the court considered the parties' arguments and denied defendant's appeal. In a written decision, the judge reviewed the criteria for admission into Drug Court

under the Drug Court Statute and the Manual.  He found "defendant is a Track Two[2] applicant because he [wa]s charged with 3rd degree crimes for which there are no mandatory extended terms of imprisonment."  However, the court also found "[t]his defendant was previously convicted of the crime of possession of a handgun, and is therefore ineligible for the Drug Court program."

This appeal followed.

## II.

"Drug Courts are specialized courts within the Superior Court that target drug-involved 'offenders who are most likely to benefit from treatment and do not pose a risk to public safety.'"  State v. Meyer, 192 N.J. 421, 428-29 (2007) (quoting Manual, supra, at 3).  The Supreme Court has repeatedly recognized the positive role Drug Courts play in our society. State v. Clarke, 203 N.J. 166, 174 (2010) (citing Meyer, supra, 192 N.J. at 429).

> [Drug C]ourts address the seemingly
> intractable social problem presented by the
> scourge of drugs that has devastated

---

[2]  As discussed infra, the Manual describes two tracks through which defendants can be sentenced into Drug Court: one under the statutory criteria in the Drug Court Statute (Track One) and the other (Track Two) under the Manual's criteria for defendants who are not eligible under the statute.

countless families and is the source of so many collateral crimes. What distinguishes Drug Courts from other courts is the oversight and personal involvement of the [D]rug [C]ourt judge in the treatment process. A team approach is a distinctive feature of Drug Court. The judge leads court staff, probation officers, treatment counselors, substance abuse evaluators, and the prosecutor and defense attorney to monitor a participant's recovery. Participants in [D]rug [C]ourt programs are subject to intensive supervision, frequent drug testing, and regular court appearances, combined with treatment and recovery services.

Drug Courts have achieved notable success. Within three years of finishing a [D]rug [C]ourt program, only fourteen percent of [D]rug [C]ourt graduates were arrested for new indictable crimes. In comparison, a fifteen-state study found that 67.5 percent of offenders released in 1994 had been rearrested within three years of release. Ninety-five percent of drug tests taken by New Jersey program participants produced negative results, and at the time of graduation, ninety-three percent of the participants were employed. Drug [C]ourt programs are credited with helping participants give birth to drug-free babies and regain custody of their children.

Additionally, the State realizes substantial cost-savings through [D]rug [C]ourt programs. The average cost per year to house an inmate in state prison is $34,218 compared to $17,266 to give that same offender the rehabilitative services of Drug Court, including six months of in-patient treatment.

Those few statistics show the obvious benefits of our [D]rug [C]ourt programs. [3]

[Meyer, supra, 192 N.J. at 429-30 (citations and internal quotation marks omitted).]

The executive and legislative branches have also recognized the success and value of the Drug Court program. See Preamble to Executive Order No. 83 dated November 28, 2011, "Creation of the Governor's Task Force on Recidivism Reduction," 44 N.J.R.

---

[3]  Statistics from the AOC through December 2013 reflect the Drug Court's success:

| | |
|---|---|
| A)  Total number of participants enrolled in the New Jersey adult drug court program since 4/1/02 | 14,783 |
| B)  Number of current (active, non fugitive) participants in the program | 5,510 |
| C)  Number of participants who have successfully commenced and are currently in the final phase of the program | 601 |
| D)  Number of participants successfully graduated from all phases of the program | 3,400 |
| E)  Statewide One-Year Participant Retention Rate | 83.4% |
| F)  Statewide Program:  (4/1/02 to present) Cumulative Rate of Program Retention | 57.2% |
| G)  Since 4/1/02, percentage of participants<br>African American:<br>Caucasian:<br>Hispanic/Latino:<br>Other: | <br>42%<br>47%<br>9%<br>2% |
| H)  Percentage of active participants who are full-time employed | 68% |
| I)  Percentage of participants employed at the time of graduation | 90% |
| J)  Percentage of negative drug tests (over 10,000 tests conducted per month) | 96% |
| K)  Number of drug free babies born to participants  (Total of 308 including pilot program statistics) | 286 |
| L)  Number of parents who regained custody of their minor children due to their participation in the program (Total of 174 children including pilot program statistics) | 144 |
| M) Percentage of graduates who improved their level of education or vocational skills while in the program | 29% |
| N) Total amount of fines, fees and penalties paid by drug court graduates while in the program. | $6.74 million |
| O)  Drug Court Graduates w/in 3 years of graduation<br>    Current rate of re-arrest in NJ for new indictable crimes<br>    Current rate of re-conviction in NJ for new indictable crimes<br>    Current rate of new sentences to NJ state prison | <br>14%<br>5%<br>2% |
| P)  Drug Court Graduates at any time since graduation. (Some participants graduated over 10 years ago)<br>    Total recidivism rate (re-conviction of NJ indictable crime) for all graduates **at any time** since graduation: | <br>8% |
| Pilot Drug Court Programs were operating before 4/1/02 in Camden, Essex, Mercer, Passaic and Union Counties. | |
| SOURCE: Administrative Office of the Courts, Drug Court Unit, Trenton, NJ, 2010.  For more information call 609-292-3488 | |

A-3527-13T2

3(a) (January 3, 2012) ("New Jersey's Drug Court . . . helps to achieve the overriding goal of the New Jersey Code of Criminal Justice to protect public safety by reducing the incidence of crime . . . .") and the legislative history of the 2012 amendments to the Drug Court Statute discussed, infra.

III.

Our review of a trial court's application of the Drug Court Statute and Manual to a defendant involves a question of law. "Our standard of review on legal issues is de novo and we owe no deference to the trial court's 'interpretation of the law and the legal consequences that flow from established facts [.]'" State v. Bradley, 420 N.J. Super. 138, 141 (App. Div. 2011) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The Drug Court Statute creates a "special probation" as compared to regular probation, which has long been an authorized disposition under the New Jersey Code of Criminal Justice (Code), N.J.S.A. 2C:1-1 to 2C:104-9. See N.J.S.A. 2C:43-2(b)(2); N.J.S.A. 2C:35-14.

In general terms, a regular probationary sentence is typically imposed for third- or fourth-degree offenses, which do not contain a specific provision requiring a state prison sentence. For such offenders with no prior criminal record,

there is a presumption against incarceration, and for such offenders with a prior record, there is no presumption either for or against a custodial sentence. N.J.S.A. 2C:44-1(e); Meyer, supra, 192 N.J. at 433 n.5. Where there is no presumption either for or against incarceration, the court must "weigh the aggravating and mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b)" in making the "in-out" decision, that is, whether to impose a state prison sentence or a probationary sentence. Clarke, supra, 203 N.J. at 176; Meyer, supra, 192 N.J. at 433 n.5.

As we recently explained:

> For crimes of the first or second degree, there is a presumption of imprisonment, N.J.S.A. 2C:44-1(d), which is rarely overcome. State v. Soricelli, 156 N.J. 525, 532-34 (1999). Thus, for such offenders, a regular probationary sentence is almost never appropriate under the Code's general sentencing provisions.

> Special probation is another authorized disposition under the Code. It is not contained in N.J.S.A. 2C:43-2(b)(2), but in N.J.S.A. 2C:35-14. The term "special probation" first appeared in that section when it was amended in 1999. Meyer, supra, 192 N.J. at 434 . . . . [T]hat amendment, together with subsequent amendments, set special probation apart from regular probation, rendering each a separate and distinct sentencing disposition authorized by the Code.

> Special probation is designed to divert otherwise prison-bound offenders into an

11

intensive and highly specialized form of probation designed to "address in a new and innovative way the problem of drug-dependent offenders caught in a never-ending cycle of involvement in the criminal justice system." Id. at 434-35. Thus, the Legislature created special probation as a disposition aimed specifically at prison-bound offenders, who would not be eligible for regular probation.

[State v. Bishop, 429 N.J. Super. 533, 539-40 (App. Div.), certif. granted, 216 N.J. 14 (2013).]

The basic objective of the Drug Court Statute "is to allow deserving prison-bound addicted offenders the opportunity for 'special probation,' an opportunity to recover from the throes of their addiction and the cycle of their involvement with the criminal justice system." Meyer, supra, 192 N.J. at 428. It "does not suggest that addicted offenders whose crimes do not mandate a prison sentence and who are eligible for probation under N.J.S.A. 2C:45-1 should not be accorded the same judicial resources to spur their rehabilitation as those who are facing incarceration." Ibid.

"Surely, if [a] defendant is to receive a probationary term conditioned on in-patient treatment and intensive supervision, it is preferable th[e] defendant be monitored within a specialized court with personnel who have the particularized skills and training to maximize the prospect of the offender's rehabilitation." Ibid. For that reason the Court created a

second track for admission to "special probation" as defined in the Manual for "non-prison bound offenders."  Manual, supra, at 9.

The procedures for admission to and participation in Drug Court is set forth in the Manual because "Drug Courts are a creature of the judiciary . . . . "  Clarke, supra, 203 N.J. at 174 (citation and internal quotation marks omitted). Requirements for admission to Drug Court are clearly defined.

> The [] Manual outlines two separate tracks for admission into Drug Court.  The applicant must either meet the requirements for special probation pursuant to N.J.S.A. 2C:35-14, [T]rack [O]ne, or otherwise be eligible under other sections of the Code of Criminal Justice[, T]rack [T]wo.
>
> Under the first track, to meet the requirements for special probation, the applicant must have committed a crime that is subject to a presumption of incarceration or a mandatory prison term, and the judge must find that the applicant satisfies nine separate factors.  A presumption of imprisonment applies to an applicant who is charged with a first or second-degree offense.  If the applicant is successful in meeting the requirements for admission under [T]rack [O]ne, the judge will then impose a five-year period of special probation. Admission under this track is generally obtained with the prosecutor's consent. If the prosecutor does not consent, the trial judge may only admit the applicant under

A-3527-13T2

[T]rack [O]ne if the judge finds a gross and patent abuse of prosecutorial discretion.[4]

The second track permits applicants to be admitted into Drug Court under the general sentencing provisions of the Code of Criminal Justice. An applicant is eligible for Drug Court sentencing under this track if:

> a. the person has a drug or alcohol dependence, as determined by a diagnostic assessment and substance abuse treatment and monitoring is likely to benefit the person; and
>
> b. the person has not been previously convicted or adjudicated delinquent for, and does not have a pending charge of murder, aggravated manslaughter, manslaughter, robbery, kidnapping, aggravated assault, aggravated sexual assault or sexual assault, or a similar crime under the laws of any other state or the United States; and
>
> c. the person did not possess a firearm at the time of the present offense and has no history of possession of a firearm during an offense; and
>
> d. no danger to the community is likely to result from the person being placed on probation.

[Id. at 174-76 (citations and internal quotation marks omitted).]

---

[4] As discussed infra, the 2012 amendments to the Statute deleted the prosecutor's ability to bar admission by withholding consent.

Based on the quantifiable success of Drug Courts, the Legislature broadened the scope of special probation through amendments to the statute adopted in 2012. L. 2012, c. 23. Evidence of the Legislature's intention to liberalize admission to Drug Court is found in the legislative history for the 2012 amendments. For example, the Legislature contemporaneously enacted N.J.S.A. 2C:35-14.1 and -14.2, effective July 1, 2013, which permit a court to sentence a qualified offender under the Drug Court Statute even if the defendant does not seek admission, and even if the defendant is a third-degree offender, who had been previously "convicted of a crime subject to the presumption of imprisonment or that resulted in imposition of a State prison term."

Also, as to the Drug Court Statute itself, a Senate committee stated the statute was being amended "in order to permit additional offenders who may benefit from the program to be diverted into the program instead of being sentenced to a term of incarceration . . . . [by giving] a court . . . greater discretion to place the person on special probation, even if one or more of the enumerated discretionary factors was not met by a particular defendant." Senate Budget and Appropriation Committee, Statement to S. 881 (April 3, 2012).

The 2012 amendments directly altered eligibility requirements and procedures for consideration of Track One defendants. For example, prior to the amendments, N.J.S.A. 2C:35-14(c) granted the prosecutor the right to object to an otherwise qualified defendant's entry into Drug Court and, absent a showing of "gross and patent abuse of [the prosecutor's] discretion," a court could not override that objection and admit the defendant to Drug Court. Subsection (c) was deleted in the 2012 amendments. Also, the amendments removed the express ban on admission of those defendants who committed either second-degree robbery or burglary offenses. L. 2012, c. 23, S.881, §5.

Despite the Legislature's clear intention to broaden Drug Court access, the Manual has not similarly been modified and remains as originally released in 2002. As a result, its admission criteria for Track Two candidates continues to bar defendants who have a criminal history that include convictions for second-degree robbery involving a firearm, even though under the statute as amended an offender who is at present sentenced for the very same crime may be admitted to Drug Court if otherwise qualified.

Defendant argues "[e]ligibility for admission for defendants charged with less serious crimes is now . . . more stringent than for those charged with more serious crimes," which is "inconsistent with the sentencing philosophy of the Criminal Code and visits an injustice upon this class of defendants."  He claims the court's categorical denial of his request for Drug Court admission was contrary to the clear language of N.J.S.A. 2C:35-14, especially in light of the recent amendments.

As noted, defendant was barred from admission to Drug Court based on the Manual's requirements for Track Two admission, which prohibits defendants who possessed a firearm "at the time of the present offense [or if they have a] history of possession of a fireman during [the commission] of an offense."  Manual, supra, at 16 (emphasis added).  This condition is more restrictive than the similar requirement for Track One offenders who commit a more serious offense.  Ibid.  Under the statute, a Track One offender is eligible for Drug Court if "the person did not possess a firearm at the time of the present offense and did not possess a firearm at the time of any pending criminal charge."  Id. at 11 (emphasis added).  A more serious offender

may, therefore, have a prior conviction for a weapons charge and still be eligible for Drug Court.

Drug Courts were created by the Supreme Court through a directive.[5] These specialized courts are operated as "creatures" of our court system. The question we are therefore confronted with is whether the Legislature's recent amendments to the statute suggest a need for amendments to the admission criteria for Track Two eligibility. We believe there is such a need.

The decision to alter or otherwise deviate from a directive's requirements because of a legislative enactment

---

[5] On July 22, 2002, then director of the AOC, Hon. Richard J. Williams, issued directive 02-02 introducing the Manual, which was only modified in 2004 to address the transfer of supervision of participants from one county to another. See Dir. 14-04. Notably, the 2002 directive stated (emphasis added):

> New Jersey is currently in a process of expansion and standardization of drug courts. The [] Manual is a document that will be evolving over the next few years . . . .
>
> The [] Manual also details program eligibility criteria . . . . The application of uniform statewide eligibility criteria is critical to operating the program equitably throughout the State . . . .
>
> As noted, while the [] Manual is now being promulgated for immediate statewide use, portions remain under ongoing development and refinement . . . . As specific standards or procedures are developed and approved . . . [it] will be supplemented . . . .

involves a balancing of the powers reserved to each branch of government. The need for striking a balance is clear from our constitution's recognition: "The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3 (emphasis added). "'[S]ubject to law' mean[s] substantive law, such as legislation and the common law, as opposed to pleading and practice." In re P.L. 2001, Chapter 362., 186 N.J. 368, 380 (2006) (citing Winberry v. Salisbury, 5 N.J. 240, 258, cert. denied, 340 U.S. 877, 71 S. Ct. 123, 95 L. Ed. 638 (1950)).

We have previously observed "[w]ith regard to the binding effect of administrative directives . . . that in addition to the Supreme Court's constitutional authority to 'promulgate rules of administration as well as practice and procedure, . . . the Chief Justice, as administrative head of the court system, can promulgate binding directives either directly or through the Administrative Director of the Courts.'" Williams v. State, 375 N.J. Super. 485, 510 (App. Div. 2005) (quoting State v. Linares, 192 N.J. Super. 391, 397 (Law Div. 1983)), aff'd, In re P.L. 2001, Chapter 362, supra, 186 N.J. at 368. However, "[t]here is no question that the three branches of government do not stand in isolation from each other[,]" id. at 512, and

> [i]n the twilight area between practice and
> procedure and substantive law, [the Supreme
> Court] in the spirit of comity has attempted
> to accommodate legitimate expressions of
> legislative authority and has shared
> responsibility with the Legislature in key
> areas of joint concern.  See, e.g., N.J.S.A.
> 2C:43-12 to -22, R. 3:28, and [State v.]
> Leonardis, [] 73 N.J. [360,] 374-76 [(1977)]
> (illustrating legislative and judicial
> cooperation in creation and implementation
> of pretrial intervention program —
> diversionary program for first-time, non-
> violent offenders).

> [In re P.L. 2001, Ch. 362, supra, 186 N.J.
> at 380 n. 1].

Illustrative of this point is the Court's discussion in Leonardis, supra, about the overlapping nature of the Pretrial Intervention Program (PTI).  The late Justice Morris Pashman pointed out that judicial review must always be available to "check only the most egregious examples of injustice and unfairness," which might occur in the administration and implementation of joint judicial-legislative programs involving the administration of justice, stating

> [o]ur experiences with admission procedures
> are limited.  We intend to continue our
> supervisory role over the operation of this
> program and the legal determinations of
> reviewing courts and local officials . . . .
> By their very nature, the guidelines place
> primary responsibility for evenhanded
> administration of the programs in the hands
> of the prosecutors and the program
> directors.  Judicial review should be
> available to check only the most egregious
> examples of injustice and unfairness.

> [Leonardis, supra, 73 N.J. at 383-84
> (citations and internal quotation marks
> omitted).]

The authority to alter existing substantive law, court rules and directives rests firmly with the Legislature and the Supreme Court. In re State in Interest of A. C., 115 N.J. Super. 77, 84 (App. Div. 1971). "As an intermediate appellate tribunal, we adhere to the decision of our Supreme Court in those cases. Any departure should be undertaken 'by the court of last resort, and not by the Appellate Division.'" Ibid. (quoting Casale v. Hous. Auth., City of Newark, 42 N.J. Super. 52, 62 (App. Div. 1956)). Although the Supreme Court has unfettered authority to issue and modify its directives, we discern unfairness in this case, especially in light of the legislature's obvious intention to liberalize admission to Drug Court based on the success of the program.

Modification of the Manual's guidelines is especially appropriate in a case such as the one before us that involves a claim of disparate treatment in sentencing. "'Th[e] Court often has taken affirmative steps to ensure that sentencing and disposition procedures, whether authorized by statute or court rule, will not produce widely disparate results for similarly situated defendants.'" State v. Palma, 219 N.J. 584, 593 (2014) (quoting State v. Moran, 202 N.J. 311, 326-27 (2010)). The

21

disparity in this case is highlighted by the fact that now offenders convicted of second-degree robbery armed with a non-deadly weapon are permitted to enter Drug Court while Track Two offenders like defendant, who recently committed a third-degree drug offense and years earlier had been convicted of a weapons charge are barred entry. It is simply not fair that defendant's record would disqualify him under one track but not the other. There is no valid policy consideration to support that result and the distinction subverts, rather than supports, the policy to admit drug-addicted offenders into the program.

Our opinion is supported by the Legislature's decision to remove the prosecutor's ability to object to a defendant's admission to Drug Court subject only to proof that his or her decision was a patent or gross abuse of discretion. By its action, the Legislature clearly evinced an intention to rely on a judge's discretion and ability to better determine admission without continuing the prosecutor's right to veto.

Our decision does not, however, result in defendant's automatic admission to Drug Court; it only allows his application to be considered despite his earlier weapons offense. On remand, the court must now consider relevant factors specific to defendant, guiding Drug Court admission, including his dangerousness to the community while on probation,

Manual, supra, at 16 (A person is eligible if "no danger to the community is likely to result from the person being placed on probation."); whether he is in fact drug dependent; and defendant's entire criminal history, including his weapons conviction, along with any other factor impacting this determination.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION